UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MELVIN COLLINS,

    Plaintiff,

v.

JOHN SNOW, SECRETARY OF DEPT. OF TREASURY,

    Defendant.
                                  /

Case No. 04-74628

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT [2]**

This employment discrimination case came before the Court on Defendant's motion to dismiss and for summary judgment, brought pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 56. Plaintiff's complaint alleges claims of sexual harassment, hostile work environment, and retaliation in violation of Title VII, 42 U.S.C. § 2000e-2(a) (Counts I and III) and claims of sexual harassment, hostile work environment, and retaliation in violation of Michigan's Elliott-Larsen Civil Rights Act, Mich. Comp. Laws §§ 37.2103(h)(iii) and 37.2701, respectively (Counts II and IV). For the reasons stated below, Defendant's motion is GRANTED.

**I. Facts**

In 2001, Plaintiff was involved in a sexual relationship with his first-line supervisor, Denise Jackson ("Jackson"). (Compl. at ¶ 9.) During this time, Plaintiff and three other employees in Jackson's group were cited for performance deficiencies involving their

inventory management. (*Id.* at ¶ 10.) Plaintiff's second-line supervisor, Bettye J. Caldwell ("Caldwell"), told Jackson to increase her review of each of these four employees' work performance. (*Id.* at ¶ 11.) Accordingly, Plaintiff's performance and progress was closely monitored by Jackson throughout 2001 and was found lacking at each review. (*Id.* at ¶¶ 10-16.)

In early January 2002, Plaintiff broke off his relationship with Jackson. (*Id.* at ¶ 18.)

On February 5, 2002, Jackson issued a performance appraisal for Plaintiff for the period ending December 31, 2001 ("2001 Performance Appraisal") in which she rated him "minimally successful" on four out of five critical elements. (*Id.* at ¶ 19.)

On February 7, 2002, Plaintiff was removed as the group ICS resource person, and his flex-place privileges were canceled. (*Id.*)

### A.  Union Grievance Process

On February 22, 2002, the National Treasury Employees' Union filed a grievance on Plaintiff's behalf regarding his 2001 Performance Appraisal. (*Id.* at ¶ 21.) Under the collective bargaining agreement between the Union and the Treasury Department, NORD V, employees had the right to file grievances concerning discrimination. (*Id.* at ¶ 22.) On April 25, 2002, Plaintiff notified the Union Chief Steward about his sexual discrimination claims against Jackson. (*Id.* at ¶ 25.)

On August 2, 2002, Plaintiff's grievance was officially resolved in his favor. (*Id.* at ¶ 41.) Pursuant to the resolution, Plaintiff was transferred to a different office of his choosing, he was assigned a new inventory, and his 2001 Performance Appraisal was amended with an upgraded rating. (*Id.* at ¶¶ 37-41.)

### B.  EEO Process and Agency Response

In late April or early May 2002, after his Union grievance was filed, but not yet resolved, Plaintiff sought EEO counseling, claiming sex discrimination against Jackson. (Pl.'s Corr. Resp. at 3; Pl.'s Ex 2, V. Jackson 9/17/02 Aff. at 2; Def.'s Ex B, 10/12/04 EEOC Decision at 10.)  Bettye Caldwell, Jackson's supervisor and Plaintiff's second-line supervisor, was notified on May 7, 2002 about Plaintiff's sex discrimination allegations by both an EEO official and Plaintiff's Union representative.  (Compl. at ¶¶ 26-27.)

On May 10, 2002, Caldwell met with Plaintiff and Jackson and advised Plaintiff that he would immediately be transferred out from Jackson's supervision and placed into another supervisor's group.  (*Id.* at ¶ 29.)  Caldwell asked Plaintiff if he wanted to continue working in the Pontiac office.  Plaintiff asked to be transferred to a job at the Detroit Computing Center in the Facilities Division or the Office of Employee Protection.  (*Id.* at ¶¶ 30, 32.)  Caldwell informed Plaintiff that the Facilities Division was outside her authority but that she would discuss a transfer there with the Director.  (*Id.* at ¶ 34.)  Plaintiff was offered the opportunity to transfer to the Detroit or Farmington Hills Offices.  (*Id.* at ¶ 36.)

Caldwell also informed Plaintiff that, to the extent he was seeking to change his position as a Revenue Officer because the duties related to that position were causing him to suffer job-related stress, he would need to provide a physician's statement or other medical support for that claim before he could be transferred out of the position of Revenue Officer.  (*Id.* at ¶¶ 32, 33, 35.)  Plaintiff failed to provide medical support to Caldwell or the IRS before his grievance and EEO complaint were filed.  (Def.'s Ex. C, 9/18/02 and 9/30/02 physician letters; Def.'s Ex. B, EEOC Decision at 15.)

Plaintiff opted to transfer to the Farmington Hills office and began working there on June 2, 2002.  (Compl. at ¶ 37.)  After discussions with Union representatives and EEO

3

officials, the Area Director agreed to raise Plaintiff's 2001 performance rating, and allowed Plaintiff to receive a new inventory. Plaintiff's 2001 Performance Appraisal was officially amended to reflect the upgraded ratings on June 27, 2002. (*Id.* at ¶¶ 38-40.)

On June 26, 2002, Plaintiff filed a formal complaint with the EEOC, alleging claims of sexual discrimination against Jackson, and claims of retaliation against Jackson and Caldwell because he was required to remain "in the field under the revenue officer job series," and transferred to the Farmington Hills office with his same inventory and 2001 Performance Appraisal, as opposed to being reassigned to another office under a different job title as he had requested. (Def.'s Ex. A, 6/26/02 EEOC Compl.)

The Agency conducted an administrative investigation, and Plaintiff requested a hearing before an EEOC Administrative Judge.

After a September 27, 2004 hearing, the EEOC Administrative Judge issued a written decision dismissing Plaintiff's sexual discrimination claims, finding that, *inter alia*, Plaintiff failed to timely contact the EEO counselor and that he had initially elected to pursue his claims through the negotiated grievance process and was thus precluded from raising them again through the EEO forum. (Def.'s Ex. B, 9/27/04 Decision at 8-13.) The Administrative Judge also dismissed Plaintiff's claims of retaliation, finding that the IRS had articulated a legitimate, non-discriminatory reason for its actions and the Plaintiff failed to present any evidence that the IRS's reasons were a pretext for retaliation. (*Id.* at 13-15.) The Judge found that (1) Plaintiff voluntarily transferred to the Farmington Hills office, (2) this transfer was offered because it was close to Plaintiff's home, (3) Plaintiff was initially reassigned with his existing inventory because it was in the same geographic area, but was assigned a new case load (inventory) shortly afer his transfer to Farmington Hills; and (4) Plaintiff

4

failed to provide medical documentation supporting his claim that he could no longer preform his duties as a Revenue Officer. (*Id.*)  As to the case inventory issue, the Administrative Judge further observed that "[t]his issue was resolved through the negotiated grievance process" and was thus moot. (*Id.* at 15.)

On October 26, 2004, the Department of Treasury issued a final order implementing the EEOC Administrative Judge's decision.

On November 24, 2004, Plaintiff filed this suit.

**II.   Standard of Review**

**A.  Rule 12(b)(1)**

A Rule 12(b)(1) motion to dismiss addresses whether the Court lacks jurisdiction over the subject matter of the lawsuit.  *See* Fed. R. Civ. P. 12(b)(1).  Plaintiff has the burden of proving subject matter jurisdiction.  *Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266 (6th Cir. 1990).

**B.  Rule 12(b)(6)**

A Rule 12 (b) (6) motion to dismiss tests the sufficiency of a complaint.  *See* Fed. R. Civ. P. 12(b)(6).  In a light most favorable to the plaintiff, the court must assume that the plaintiff's factual allegations are true and determine whether the complaint states a valid claim for relief. *See Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Federal Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996); *Forest v. United States Postal Serv.*, 97 F.3d 137, 139 (6th Cir. 1996).

This standard of review "'requires more than the bare assertion of legal conclusions.'" *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997) (quoting *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The complaint must

include direct or indirect allegations "respecting all the material elements to sustain a recovery under *some* viable legal theory." *See In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citations omitted). A court should not grant a 12(b)(6) motion unless the movant shows "beyond doubt that the plaintiff can prove no set of facts in support of his claim." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The Court's function "is not to weigh the evidence or assess the credibility of witnesses but rather to examine the complaint and determine whether the plaintiff has pleaded a cognizable claim." *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 452 (6th Cir. 2003) (internal citations omitted).

### C. Rule 56 - Summary Judgment

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

### III.  Analysis

#### A.  Alleged Violations of Michigan's Elliott-Larsen Civil Rights Act

Defendant first argues that Plaintiff's claims of sex discrimination and retaliation under Michigan's Elliott-Larsen Civil Rights Act (Counts II and IV) are not cognizable because Title VII provides the exclusive remedy for employment discrimination claims of federal employees. Plaintiff does not contest this argument.

Plaintiff, a Revenue Officer for the Internal Revenue Service, is a federal employee. (Complaint at ¶ 5.)  It is well-settled that Title VII is the exclusive remedy for a federal employee's employment discrimination claims. *See Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976). Accordingly, Counts II and IV of Plaintiff's complaint are dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

#### B.  Sex Discrimination Claims Under Title VII

Defendant next argues that Plaintiff's Title VII sex discrimination claims must be dismissed because: (1) Plaintiff elected to pursue these claims under the negotiated grievance process set forth in his collective bargaining agreement, and (2) Plaintiff failed to properly exhaust his administrative remedies. Because this Court agrees with Defendant

on its first, election-of-remedies argument, there is no need to address its second, alternative argument that Plaintiff failed to timely pursue his EEOC claims.

Defendant argues that Plaintiff had two options for seeking relief for his Title VII claims of sex discrimination. He could either (1) go through his union and pursue the procedures made available under the collective bargaining agreement, Civil Service Reform Act ("CSRA"), 5 U.S.C. § 7101, *et seq.*, or (2) file an EEO complaint and pursue his statutory remedies through the EEO process, 29 C.F.R. § 1614.013. Defendant further argues that, an election of one of these remedies, precludes pursuit of the other. This Court agrees.

Under the CSRA, an "aggrieved employee" with discrimination claims that may be grieved pursuant to a collective bargaining agreement "may raise the matter under a statutory procedure or the negotiated procedure, but not both." 5 U.S.C. § 7121(d). *See also* 5 U.S.C. § 2302(b)(1) (listing the prohibited practices, which include sex discrimination).

The EEOC regulations similarly provides, in pertinent part, that:

When a person is employed by an agency subject to 5 U.S.C. § 7121(d) and is covered by a collective bargaining agreement that permits allegations of discrimination to be raised in a negotiated grievance procedure, a person wishing to file a complaint or a grievance on a matter of alleged employment discrimination must elect to raise the matter either under part 1614 or the negotiated grievance procedure, but not both. <u>An election to proceed under this part is indicated only by the filing of a written complaint</u>; use of the pre-complaint process as described in § 1614.105 does not constitute an election for purposes of this section. . . . <u>An election to proceed under a negotiated grievance procedure is indicated by the filing of a timely written grievance. An aggrieved employee who files a grievance with an agency whose negotiated agreement permits the acceptance of grievances which allege discrimination may not thereafter file a complaint on the same matter under this part 1614 irrespective of whether the agency has informed the individual of the need to elect or of whether the grievance has raised an issue of discrimination.</u>

8

29 C.F.R. 1614.301(a) (emphasis added).  *See also* 29 C.F.R. § 1614.107(a)(4) (requiring dismissal of an agency complaint "[w]here the complainant has raised the matter in a negotiated grievance procedure that permits allegations of discrimination. . . .").

It is undisputed that Plaintiff was covered by a collective bargaining agreement between his Union and the Treasury Department, and that, pursuant to the terms of the Master Agreement, Treasury employees or their Union representatives may file grievances concerning alleged employment discrimination.  It is likewise undisputed that on February 22, 2002, Plaintiff's Union representative filed a timely grievance that was ultimately resolved in Plaintiff's favor, and that on June 26, 2002, four months after the union grievance was filed, Plaintiff filed a complaint with the EEOC regarding the same matter as the union grievance.  (Def.'s Ex. A, 6/26/02 EEOC Compl.; Ex. B, 9/27/04 EEOC Decision at 12-13.)  As shown by these undisputed facts, Plaintiff initially elected to pursue this matter through the negotiated grievance process.  He is thus bound by that irrevocable election of remedies and cannot now pursue the sex discrimination claims asserted in this subsequent action.  CSRA, 5 U.S.C. § 7121(d);  *See also Guerra v. Cuomo*, 176 F.3d 547, 548 (D.C. Cir. 1999) (construing § 7121(d) and affirming the district court's decision dismissing the plaintiff's complaint on the ground that her "earlier decision to file a union grievance constituted an irrevocable election of remedies."); *Maddox v. Runyon*, 139 F.3d 1017, 1021 (5th Cir. 1998) (observing that § 7121(d) precludes covered federal employees from pursuing both the EEO statutory procedure and a union-assisted negotiated grievance procedure).

**C.  Retaliation Claims Under Title VII**

9

To establish a prima facie case of retaliation, Plaintiff must show either direct evidence of retaliation or circumstantial evidence of retaliation. Plaintiff does not argue that there is direct evidence of retaliation here. Rather, he attempts to establish a prima facie case of retaliation through circumstantial evidence. Accordingly, the *McDonnell Douglas* framework is applied.

Under that framework, the plaintiff's prima facie case is established by showing: "1) the plaintiff engaged in legally protected activity; 2) the defendant knew about the plaintiff's exercise of this right; 3) the defendant then took an employment action adverse to the plaintiff; and 4) the protected activity and the adverse employment action are causally connected." *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001). "The burden then shifts to the employer 'to articulate some legitimate, nondiscriminatory reason' for its actions." *Id.* Finally, "[i]f the defendant carries this burden, the plaintiff must then prove by a preponderance of the evidence that the reasons offered by the employer were a pretext for discrimination." *Id.* Despite the shifting burden of production, "[t]he ultimate burden of persuasion remains at all times with the plaintiff." *Id.*

Plaintiff alleges that (1) he engaged in legally protected activity when he contacted an EEO counselor about his sex discrimination claims; (2) Defendant was aware of his exercise of that right; (3) Defendant retaliated and took an adverse employment action against him when it transferred him to the Farmington Hills office with his old case inventory and his original 2001 Performance Appraisal rather than transferring him to the Detroit Computing Center as he requested; and (4) the protected activity and the adverse employment action are causally related. Defendant responds that, even assuming Plaintiff

can establish a prima facie case of retaliation, it has articulated legitimate, non-discriminatory reasons for its actions toward Plaintiff, and Plaintiff has not proffered any evidence to show that these reasons are a pretext for retaliation. Accordingly, Defendant argues, it is entitled to summary judgment on Plaintiff's Title VII retaliation claims. This Court agrees.

Defendant presents evidence supporting its claim that it acted quickly and responsibly once notified of Plaintiff's allegations of sexual harassment. Plaintiff was immediately removed from Jackson's supervision and was given the option of transferring out of the Pontiac office. (Def.'s Ex. D, Caldwell Aff. at 5, 9.) The Detroit office was suggested because Plaintiff had indicated a desire to go to a different group located in the Detroit area, and the Farmington Hills office was suggested because Plaintiff lived near there. (*Id.* at 7.) Defendant chose the Farmington Hills office and was reassigned there in June 2002 after he returned from vacation. (*Id.* at 10.)

Defendant was not transferred to the Detroit Computing Center (DCC) or Office of Employee Protection as he requested because he failed to provide any medical support for his claim that he was unable, for medical reasons, to perform his Revenue Officer duties. (*Id.* at 6-10.) Defendant was also advised that, because DCC was in a different business unit, it would be very difficult to obtain an assignment there. (*Id.* at 10.)

Plaintiff was advised that he was to take his existing case inventory with him to Farmington Hills because that office was in the same geographical area as his current case assignments; i.e., Oakland County. (*Id.* at 11.) Ms. Caldwell averred that this was not an unprecedented procedure. It was done when the offices (old and new locations)

11

were within close proximity and the reassignment was not a promotion to a higher grade. (*Id.*)

Finally, Ms. Caldwell attested that her hesitancy to change Plaintiff's 2001 Performance ratings was based on her own first-hand awareness of the deficiencies in his performance. (*Id.* at 11-12; *see also* Compl. at ¶ 10.) She did, however, agree to upgrade Plaintiff's ratings based on the extenuating circumstances presented here; i.e., allegations of sexual discrimination, so long as this was approved by the director. (*Id.* at 12.) Plaintiff's ratings were later upgraded, and he received a new caseload. (*Id.*; *see also* Compl. at ¶¶ 39-40.)

Defendant has articulated its nondiscriminatory reasons for taking the challenged employment actions with regard to Plaintiff. Thus, "the presumption of discrimination created by the prima facie case drops out of the analysis." *Gribcheck*, 245 F.3d at 552. Accordingly, "the plaintiff must answer the defendant's nondiscriminatory reasons by demonstrating that a reasonable jury could find by a preponderance of the evidence that the defendant's stated reasons are pretextual." *Id.* "A 'blanket denial [of] the employer's articulated reasons . . . is not enough; a plaintiff must take the extra step of presenting evidence to show that the reasons given are an attempt to cover up the employer's alleged real discriminatory motive." *Id.* (quoting *Irvin v. Airco Carbide*, 837 F.2d 724, 726 (6th Cir. 1987)).

Plaintiff has failed to present any evidence showing that Defendant's nondiscriminatory reasons for its actions are merely pretext for retaliation. Accordingly, Defendant is entitled to summary judgment on these claims.

**IV. Conclusion**

For the foregoing reasons, Defendant's motion to dismiss and for summary judgment is GRANTED. Plaintiff's complaint is dismissed.

        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: June 2, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 2, 2005, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer
        Case Manager